IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| PAMELA JOYCE B.,[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:21-CV-00087-H-BU |
| | § | |
| KILOLO KIJAKAZI,[2] | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff PAMELA JOYCE B. seeks judicial review of a final adverse decision of

the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g).

Dkt. No. 1. Under Special Order No. 3-251 of this Court, this case was automatically

referred for a determination of non-dispositive matters and for findings, conclusions, and

recommendation on dispositive matters. The undersigned granted Plaintiff's motion

seeking leave to proceed *in forma pauperis* (Dkt. No. 8), and Plaintiff's motion for leave

to proceed without local counsel (Dkt. No. 7). The parties have not consented to proceed

before a magistrate judge.

---

[1] Due to concerns regarding the privacy of sensitive personal information available to the public through opinions in Social Security cases, Plaintiff is identified only by first name and last initial.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

For the reasons explained below, the undersigned recommends that the Court affirm the Commissioner's decision.

## I.    BACKGROUND

Plaintiff alleges that her disability began January 4, 2018. *See* Administrative Record, Dkt. No. 16-1 ("Tr.") 214. Plaintiff initially filed applications under Title II for both a period of disability and disability insurance benefits. Tr. 211. Plaintiff also filed an application for Title XVI Supplemental Security Income on May 7, 2018. Tr. 211. Those applications were denied on July 5, 2018, and again upon reconsideration on January 22, 2019. Tr. 211. After both denials, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 211. That hearing was held telephonically on October 11, 2019, with the ALJ sitting remotely in Fort Worth, Texas, and Plaintiff appearing in Abilene, Texas. Tr. 315-332. Plaintiff, who appeared with counsel, and a vocational expert ("VE") offered testimony at the hearing.

At the time of the hearing, Plaintiff was 55 years old. Tr. 318. She has a master's degree in counseling and has past work experience as a teacher's aide, counselor, case worker, teacher, admissions evaluator, and transcriptionist. Tr. 221, 328-29.

The ALJ found that Plaintiff was not disabled and was not entitled to disability benefits. *See* Tr. 208-222 ("ALJ Decision"). At step one of the analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 4, 2018, the alleged disability onset date.[3] Tr. 214. At step two, the ALJ found the Plaintiff had several severe

---

[3] As discussed further below, the Commissioner employs a five-step analysis in determining whether claimants are disabled under the Social Security Act.

impairments including degenerative disc disease of the lumbar, hypertension, post-traumatic stress disorder ("PTSD"), major depressive disorder, and obesity. Tr. 214.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met the severity required in the Social Security Regulations, and evaluated Plaintiff's obesity, finding that her obesity did not "exacerbate the remaining impairments such that listing level severity is met." Tr. 214-15. Also during this step, the ALJ evaluated the severity of Plaintiff's mental impairments using the Psychiatric Review Technique ("PRT") and whether those impairments satisfy the criteria of listing 12.04 and 12.15. Tr. 215. The ALJ evaluated the criteria's four areas and found the Plaintiff had mild or moderate limitations in all. Tr. 215. In the area of understanding, remembering, or applying information, the ALJ found Plaintiff had a moderate limitation, noting that although Plaintiff offered subjective allegations of anxiety and insomnia interfering with her abilities, Plaintiff "showed intact memory and average intelligence throughout the period at issue." Tr. 215. The ALJ found Plaintiff had mild limitation in the areas of interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself. Tr. 215.

The ALJ also determined the Plaintiff had the residual functional capacity ("RFC") to perform light work as defined 20 C.F.R. §§ 404.1567(b) and 416.967(b), except: "[S]he is limited to frequent handling, fingering, and feeling with the bilateral upper extremities; and understanding, remembering, and carrying out detailed but not complex tasks and instructions." Tr. 216.

The ALJ based his opinion on medical records, treating physician and counselor statements, the Social Security Administration's ("SSA") non-examining medical and psychological consultants, prior administrative medical findings, and the Plaintiff's testimony. Tr. 216-21. At step four, the ALJ found the Plaintiff could return to her past relevant work as a teacher's aide because the position does not require performance of work-related activities precluded by Plaintiff's RFC. Tr. 221. The ALJ noted that the VE testimony showed that teacher's aide positions would involve performing detailed and not complex tasks. Tr. 221. Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Social Security Act, for the period in question. Tr. 222.

Plaintiff appealed the ALJ's decision to the Appeals Council, the Council affirmed, and Plaintiff timely filed this action in federal district court.

## II.    LEGAL STANDARDS

Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards were applied to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *see also Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Substantial evidence means more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). While a reviewing court must scrutinize the administrative record to ascertain whether substantial evidence supports the Commissioner's findings, it

4

may not reweigh the evidence, try issues de novo, or substitute its own judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citing 42 U.S. § 405(g)). A reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

To be entitled to Social Security benefits, a claimant must show that he is disabled within the meaning of the Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

In evaluating a disability claim, the Commissioner has promulgated a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the Social Security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *See* 20 C.F.R. § 404.1520, West (2017); *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. Once the claimant satisfies his or her initial burden, the

burden shifts to the Commissioner at step five to show that there is other gainful employment in the national economy that claimant is capable of performing. *Greenspan,* 38 F.3d at 236. If the Commissioner shows that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557 (citing *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989) (per curiam); *see also Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)). If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id*. However, the Court does not hold the ALJ to procedural perfection. *See Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012). Instead, a court will only reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record and only if that failure prejudiced plaintiff. *Id*. That is, only if plaintiff's substantial rights have been affected by the unsubstantiated decision. *See Audler*, 501 F.3d at 448.

### III.    ANALYSIS

Plaintiff challenges the ALJ's decision on two grounds: (1) "[t]he RFC finding failed to accommodate any of the mental limitations that the ALJ concluded were proven in the record," and therefore is not based on substantial evidence; and (2) "[t]he ALJ and Appeals Council derived power from a single Agency Commission in violation of the

Separation of Powers clause and the Constitution." Dkt. No. 20 at 1, 11. Although Plaintiff urges the Court to remand on the first ground and leave the Constitutional challenge untouched under the constitutional avoidance doctrine, the Court finds both issues require analysis because neither grounds require remand. *See* Dkt. No. 22 at 4 n.3.

A. <u>The ALJ's mental RFC is supported by substantial evidence of record.</u>

In presenting her first issue for grounds for remand, Plaintiff argues four interrelated sub-issues, asserting that each sub-issue constitutes reversible error. The Court addresses each, and the Commissioner's response, in turn.

i. *The ALJ considered Plaintiff's severe mental impairments in determining the RFC.*

First, Plaintiff argues that the RFC failed to include limitations for Plaintiff's "mental impairments of post-traumatic stress disorder (PTSD) and major depressive disorder." Dkt. No. 20 at 3. Plaintiff asserts that "[a]ccording to the ALJ, PTSD and depression presented significant limitations in mental functioning for [Plaintiff]," claiming that finding the impairment "severe" equates to finding a significant limitation on Plaintiff's mental ability to do basic work activities. *Id.* Plaintiff argues that the RFC fails to reflect that significant limitation, depriving it of the necessary substantial evidence. *Id.*, citing 20 C.F.R. §§ 404.1520(c), 416.920(c).

The Commissioner responds that the ALJ satisfied his duty to include the determined mental functional limitations because "the ALJ reasonably accounted for any moderate limitations in understanding, remembering, or applying information by limiting Plaintiff to understanding, remembering, and carrying out detailed, but not complex, tasks

and instructions." Dkt. No. 21 at 10, citing Tr. 216. The Commissioner points to caselaw affirming that moderate limitations in understanding, remembering, or applying information are "adequately accounted for with an RFC limitation to understand, remember, and carry out detailed, but not complex, tasks." *Id.* at 11-12. The Commissioner further states that Plaintiff conflated the paragraph B findings with the RFC assessment, and that no requirement in either law, regulation, or case precedent requires paragraph B findings to be incorporated in the RFC. *Id.* at 12.

In reply, Plaintiff repeats that the ALJ failed to include or sufficiently explain "the omission of the functional limitations he concluded were proven in the record at steps two and three." Dkt. No. 22 at 1.

The purpose of an RFC is to determine the most an individual can do despite their limitations. Social Security Ruling ("SSR") 96-8P, 1996 WL 374184, at *1 (S.S.A. July 1, 1996). To determine an individual's RFC, an ALJ will consider all evidence, and then determine what evidence is consistent and if that evidence is sufficient to determine disability. 20 C.F.R. § 404.1520b(a). The ALJ will also determine what evidence is incomplete or inconsistent and how to best evaluate and manage that evidence or whether to use that evidence at all. *Id.* at (b)-(c). An ALJ is not required to "follow formalistic rules in his articulation" of the evidence supporting his decision, and failure to do so does not by itself deprive the RFC of substantial evidence. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

According to the Code of Federal Regulations § 416.920a, mental impairments are evaluated at step two using a special technique to determine whether the claimant has a

medically determinable mental impairment and then the impairment is rated. 20 C.F.R. § 416.920a(a)-(b); *see also* § 404.1520a (controlling the evaluation of mental impairments in applications for disability insurance). The ALJ must determine the functional limitation of the claimant in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and the ability to adapt or manage oneself. *Id.* at (c). The claimant is rated on a five-point scale including none, mild, moderate, marked, and extreme with extreme meaning the claimant is incapable of conducting any gainful activity. *Id.* at (c)(4). Generally, a rating of "none" or "mild" means the impairment or impairments is not severe and will not indicate "more than a minimal limitation [in a claimant's] ability to do basic work activities." *Id.* at (d)(1).

The ALJ will then assess all the relevant evidence in the case record and "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184, at *5. The ALJ must base the RFC on objective medical evidence and is not required to make accommodations for self-reported symptoms that lack support. *See Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

Once a severe mental impairment is identified, the ALJ must then assess the claimant's RFC limitations, and must show that consideration in the written decision by including "the pertinent findings and conclusions based on the technique." 20 C.F.R. §§ 416.920a(e), 404.1520a(e). The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must

include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section." *Id.*.

Here, the ALJ found that Plaintiff had severe mental impairments in major depressive disorder and PTSD. Tr. 214. Then, the ALJ evaluated the severity of those impairments as presented in both Plaintiff's subjective allegations and objective medical evidence. Tr. 215-16. The ALJ considered mental status examinations which note Plaintiff's severe diagnoses and how those diagnoses affect her functionality. Tr. 215. The ALJ cites multiple medical-record exhibits which noted Plaintiff's conditions, and that her thought processes, memory, attention, and concentration remained within normal limits. *See* Tr. 215, citing Exhibit 2F (Tr. 648) (noting Plaintiff's depression and anxiety diagnosis, and concludes that Plaintiff maintained "appropriate" thought process and an ability to "participate in treatment decisions."); *see also* Tr. 215, citing Exhibit 3F (Tr. 656-60) (pointing to two medical evaluations which noted normal psychiatric findings for Plaintiff's diagnoses, intact memory, normal attention and concentration abilities). The ALJ's decision shows reliance on Plaintiff's objective medical findings which consistently showed her memory as intact and normal throughout an extended treatment period. Tr. 215.

By relying on mental status evaluations that included Plaintiff's severe diagnoses, the ALJ considered the effect those diagnoses have on her functional limitations at stage two. Therefore, the ALJ properly considered those impairments before progressing to the RFC analysis, which includes again evaluation of Plaintiff's evidence when finding her limitations. *See* Tr. 216-218.

ii.    *The ALJ did not have an obligation to determine a different RFC than the Agency consultants because he properly considered Plaintiff's medical evidence.*

Next, Plaintiff argues that the RFC limitation failed to accommodate Plaintiff's mental limitations because the ALJ found Plaintiff a "moderate limitation in understanding, remembering, or applying information, and mild limitations in her ability to interact with others; concentrate, persist, or maintain pace; adapt or manage oneself." Dkt. No. 20 at 4, citing Tr. 215. The ALJ's RFC limitation was the "same limitation of the Agency medical consultants," who assessed Plaintiff as having a mild limitation in understanding, remembering, and applying information. *Id.* at 5, citing Tr. 216. Plaintiff points out that both the ALJ and the Agency consultants limited Plaintiff to "understanding, remembering, and carrying out detailed, but not complex tasks and instructions." *Id.*; *see also* Tr. 224, 339-42, 352-54. Because the ALJ found the limitation moderate, Plaintiff argues that "logically" the RFC that including the Agency consultants' mild limitation is inadequate and requires remand. *Id.*

The Commissioner rebuts Plaintiff's allegation by asserting that the ALJ determines the RFC, not Agency consultants, and as such, the "ALJ was free to incorporate limitations he found consistent with the record as it was his duty to assess all the objective and subjective evidence and formulate the RFC from that analysis." Dkt. No. 21 at 13, citing *Andrews v. Astrue*, 917 F. Supp. 2d 624, 642 (N.D. Tex. 2013).

In reply, Plaintiff argues again that because "the medical evidence created by the Agency's own expert consultant indicated that a mild limitation in understanding, remembering, or applying information was most consistent with performing detailed and

11

non-complex tasks, the ALJ's conclusion that [Plaintiff] was more limited than the Agency consultant found required more restrictive limitations." Dkt. No. 22 at 3. Plaintiff, however, fails to cite any authority supporting this argument in either her brief or reply.

An RFC must be based on all relevant evidence and consistent with both objective medical evidence and other evidence. 20 C.F.R. § 404.1529. An ALJ may consider medical opinions and prior administrative findings, looking particularly at the supportability and consistency of those records. 20 C.F.R. §§ 404.1520c(b)(1)-(2), 416.3920(b).

Here, Plaintiff's unsupported argument fails to show the ALJ improperly determined Plaintiff's RFC. Plaintiff provides no authority requiring an ALJ to reject an RFC from an Agency consultant when the ALJ and the consultant find different levels of functional limitation in the PRT analysis. Nor does Plaintiff cite authority that mandates remand when the ALJ finds Plaintiff to be more limited than the Agency consultant.

Plaintiff appears to ask this Court, and without the benefit of authority, to seize upon a perceived inconsistency to conclude that remand is required. But Plaintiff has not articulated a properly supported legal standard that has been violated. Nor has she demonstrated how the challenged inconsistency, assuming it exists, deprives the ALJ's decision of the substantial evidence necessary to support it. The ALJ considered Plaintiff's testimony, subjective reports, medical records, physician records, and Agency consultants reports, methodically reviewing each at step three for consistency and relevance, and based his RFC upon those records. Because the ALJ properly considered medical evidence in creating the RFC limitations, Plaintiff has not shown that remand is required.

     *iii.*    *The RFC is not required to include limitations for mild impairments.*

Next, Plaintiff argues that the ALJ's RFC "fail[ed] to accommodate ANY of the rest of [Plaintiff's] proven mental functional limitations," which deprives the RFC of "any meaningful mental functional limitations." Dkt. No. 20 at 6-7, citing Tr. 215 (emphasis in original). Plaintiff argues that the RFC "included ZERO limitations designed to accommodate [Plaintiff's] mild limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself." *Id.* at 7-8 (emphasis in original). Plaintiff asserts that because the RFC must include specific functional limitations to account for all PRT findings, even mild findings, the ALJ's failure to do so is legal error. *Id.* at 6, 8-9.

The Commissioner rejects Plaintiff's assertion, stating that the argument that the ALJ did not provide limitations for her mild mental limitations is contrary to the legal standard. Dkt. No. 21 at 13. The Commissioner cites SSR 96-8p, stating that paragraph B and C assessments are not an RFC finding but a means to "rate the severity of mental impairment(s) at steps 2 and 3." *Id.* The Commissioner states that when an ALJ finds a broad area of mental functioning to be only mild limitation, the impairment is not severe. *Id.* at 14, citing *White v. Astrue*, 2009 WL 763064, at *10 (N.D. Tex. Mar. 23, 2009). The Commissioner asserts that the "ALJ had no obligation to provide RFC limitations for Plaintiff's mild paragraph B limitations." *Id.* Plaintiff does not address this argument in her reply brief.

Plaintiff again provides no relevant or controlling citation for this argument. Plaintiff states that the "ALJ's RFC must account for his PRT findings and any other

limitations," and cites *Brown v. Barnhart*, 285 F. Supp. 2d 919, 933 (S.D. Tex. 2003), in addition to out-of-circuit cases. Dkt. No. 20 at 6-7. *Brown*, however, does not support Plaintiff's argument related to RFC findings here, but instead points to relying on VE testimony from a defective question that did not incorporate the claimant's limitations. *See Brown*, 285 F. Supp. 2d at 933. Aside from *Brown*, Plaintiff only cites out-of-circuit cases applying their own circuit standards; Plaintiff does not provide relevant support from the Fifth Circuit, and the undersigned could locate none.

The Administration regulations, which are controlling and relevant authority, require an ALJ to determine the severity of a mental impairment by "assess[ing] an individual's limitation and restrictions from a mental impairment(s) in categories identified in 'paragraph B' and 'paragraph C' criteria," and then conduct "a more detailed assessment" at the mental RFC used at steps 4 and 5. SSR 96-8p, 1996 WL 374184, at *4. The ALJ is not required to include RFC limitations or discussion for mental functional limitations found to be none or mild at step two and step three of the evaluation process. *See* 20 C.F.R. § 404.1520a(d)(3) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe . . ." and once a severe impairment is found, then the ALJ will then assess the severity of the impairment as part of the RFC.).

Here, the ALJ determined at step two that Plaintiff had a mild limitation in the areas of interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. Tr. 215. After determining that Plaintiff's impairments did not satisfy the paragraph B or C criteria, the ALJ then analyzed Plaintiff's severe and non-severe

mental impairments in the RFC analysis. Tr. 215-16. The ALJ conducted a detailed review of Plaintiff's mental health records, noting that "[t]he mental health records do not document substantial functional deficits, such as memory loss, poor attention span, or difficulties interacting with others." Tr. 217. The ALJ did not find evidence of further functional limitation to include in the RFC. *See* Tr. 215.

Plaintiff fails to provide legal support showing error, and the undersigned determines that the ALJ properly applied the statutes and regulations to determine Plaintiff's RFC encompass her established functional limitations.

### iv.    *The ALJ considered Plaintiff's limitations and the testimony of a VE to find that Plaintiff could perform past skilled work as a teacher's aide*

Finally, Plaintiff argues that the RFC limitation's failures previously asserted compounded to "seemingly accommodate[] no limitations in mental functioning whatsoever" because the accommodation allowed for Plaintiff to perform skilled work. Dkt. No. 20 at 6. Plaintiff asserts that once the ALJ determined Plaintiff "had mental functional limitations resulting from at least two severe mental impairments," that determination was "completely contrary to his conclusion that [Plaintiff] could return to any type of skilled work activity." *Id.*, citing Tr. 221. Plaintiff asserts, again citing out-of-circuit cases, that the ALJ's determination that Plaintiff could return to past skilled work as a teacher's aide is a contradiction to the ALJ's assessment of Plaintiff's mental functional limitations. *Id.* at 9-10. Plaintiff asserts that the ALJ failed to follow SSR 96-8p to provide a "function-by-function assertion of claimant's limitations in comparison to the requirements of [her] past work." *Id.* at 10, citing SSR 96-8p, 1996 WL 374184, at *3-4.

The Commissioner responds that the ALJ properly determined Plaintiff could perform skilled work, stating that the ALJ "considered Plaintiff's testimony as well as the testimony of the vocational expert regarding the demands of Plaintiff's past relevant work and found that Plaintiff's RFC did not preclude the performance of her past relevant work as a teacher's aide." Dkt. No. 21 at 14, citing Tr. 221-222. "The vocational expert testified that such an individual could perform Plaintiff's past jobs work as a teacher's aide (Tr. 329-330)." *Id.* The Commissioner further asserts that Plaintiff failed to meet the burden to disprove that she was able to perform past jobs, including by declining to cross examine the VE on the topic. *Id.* at 15.

In reply, Plaintiff asserts again that remand is required because "there is no evidence that she can return to her skilled past relevant work because the ALJ has not included or sufficiently explained the omission of the functional limitations he concluded were proven in the record at steps two and three." Dkt. No. 22 at 1. Plaintiff argues that when the ALJ found the Plaintiff had multiple severe mental impairments, he could not have found her able to continue in skilled work with her mental limitations. *Id.* at 2.

SSR 96-8p requires that an ALJ conduct an "initial function-by-function assessment of the individual's physical and mental capabilities" before determining if the claimant is able to do past relevant work. SSR 96-8p, 1996 WL 374184, at *3. Then, to make that determination, an ALJ must compare his RFC assessment with the physical and mental demands of past relevant work. 20 C.F.R. § 404.1560(b). The ALJ will consider the claimant's statements, testimony of a VE, or "other resources, such as the 'Dictionary of Occupational Titles'" to obtain evidence. *Id.*

Here, the ALJ walked through Plaintiff's medical and mental health evidence, pointing to Plaintiff's functional limitations that he included in the RFC, as well as those mental functional limitations not supported in the record. Tr. 216-20. The ALJ noted Plaintiff's consistent and supported symptoms as depression, difficulty sleeping, and difficulty handling her past trauma, but that Plaintiff repeatedly reported positive responses to therapy and medication when she was medication compliant. Tr. 216-18, 221. Then, at step five, the ALJ relied on the VE's testimony that a person with Plaintiff's RFC limitations could perform a teacher's aide position, because while classified as SVP level six, the skills are related to performing detailed but not complex tasks. Tr. 221. The ALJ also noted that the skilled-work label relates to "how long it takes to lean the job, which does not necessarily correlate to the complexity of the job tasks." Tr. 221.

Building on her prior argument about mild limitations, Plaintiff argues that the omission of mild functional limitations in the RFC is legal error when the ALJ finding "involves performing skilled work." Dkt. No. 20 at 8-9. Again, Plaintiff provides no citation to controlling or persuasive law to support this argument. *See* Dkt. Nos. 20, 22. While Plaintiff makes much of the "complex and multifaceted activities" required of a teacher's aide position, Plaintiff fails to acknowledge that the ALJ discussed with the VE those requirements in the context of both the proposed RFC limitation and Plaintiff's stated limitations. *See* Dkt. No. 20 at 9. Plaintiff fails to meet her burden to show remand is required on this issue.

For these reasons, the undersigned finds that the ALJ did not commit reversible error in the RFC limitations or determination of Plaintiff's ability perform skilled work. The ALJ

is the final opinion on the interpretation of the evidence and this court cannot reweigh the evidence. *See Greenspan*, 38 F.3d at 236.

B. An unconstitutional removal clause did not deprive the ALJ and Appeals Council of the power to determine Plaintiff's disability status.

In her second issue, Plaintiff asserts that this ALJ decision, as well as all other decisions of the SSA during the relevant period, was rendered invalid by an unconstitutional removal clause. Dkt. No. 20 at 11. Plaintiff asserts that "the ALJ's delegation of authority in this case came from Mr. Saul [the former Commissioner of the SSA] and is therefore constitutionally defective." *Id.* at 12. Plaintiff states that recent Supreme Court decisions held that an executive agency led by a single head who serves for a longer term than the President and can only be removed for cause violates the Constitution. *Id.* at 11, citing *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (Jun. 20, 2020). Plaintiff asserts that her "case should be remanded for a *de novo* hearing before a new ALJ who does not suffer the unconstitutional taint of having previously heard and decided this case when the ALJ had no lawful authority to do so." *Id.* at 14.

The Commissioner agrees with Plaintiff, but only in "that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." Dkt. No. 21 at 16. But, the Commissioner continues, an unconstitutional removal clause "does not support setting aside an unfavorable SSA disability benefits determination." *Id.*, citing *Collins v. Yellen*, 141 S. Ct. 1761, 1787-89 (2021).

First, the Commissioner states that the ALJ was appointed by a different Acting Commissioner who validly conferred authority as an agency head capable of removal at will. *Id.* at 17, 19. Thus, the removal restriction did not affect the ALJ's appointment. *Id.* at 18.

The Commissioner also states that Plaintiff fails to show how the restriction actually caused the required "compensable harm." Dkt. No. 21 at 17-18, citing *Collins*, 141 S. Ct. at 1787-89. The Commissioner quotes that "'the unlawfulness of [a] removal provision'—the alleged constitutional defect both in *Collins* and here—'does not strip [an official] of the power to undertake the other responsibilities of his office.' *Id*. at 1788 n.23." *Id.* at 18. The Commissioner states that "agency action is not per se invalid simply because it can be traced back to an official subject to an unconstitutional removal protection." *Id.* at 20. "Instead, relief is available in removal challenges only where the alleged injuries are caused by officials subject to the challenged removal restrictions, and where those restrictions themselves 'inflict[ed] compensable harm' upon plaintiffs. *Collins*, 141 S. Ct. at 1789." *Id.* at 17-18. In this case, Commissioner asserts, Plaintiff cannot show the required nexus of the President's inability to remove the Commissioner to the alleged illegality of the ALJ determination of Plaintiff's benefits. *Id.* Plaintiff cannot show harm other than asserting a generalized injury to her constitutional rights "caused by the removal restrictions to support retrospective relief." *Id.* at 23.

Finally, the Commissioner argues that "Plaintiff's rehearing request should be denied under the Harmless Error Doctrine, the De Facto Officer Doctrine, the Rule of Necessity, and broad prudential considerations." *Id.* at 24.

In reply, Plaintiff argues the issue in question is not about the ALJ and Appeals Council appointment, as the Commissioner asserts, but about an improper "delegation of authority under which they adjudicated and then decided this case." Dkt. No. 22 at 5. Plaintiff asserts that the real injury that Plaintiff suffered was more than the denial of her disability claim, but a denial of a constitutional adjudication process by either the ALJ or the Appeals Counsel. *Id.*

Plaintiff's argument is legally frivolous and provides no grounds for remand, as Plaintiff's counsel is by now well aware.[4] Regardless of its frivolousness, the undersigned briefly addresses Plaintiff's argument.

As Plaintiff points out, the parties agree that 42 U.S.C. § 902(a)(3) violates the Constitution's separation of powers clause to the extent that it is construed as limiting the President's authority to remove the Commissioner without cause. *See Id.* at 4. The parties do not agree, and nor does the undersigned, that the unconstitutional removal clause negates the adverse decision by the ALJ and Appeals Council.

Assuming here that the removal clause is indeed unconstitutional, an unconstitutional removal provision does not invalidate every decision of the agency. *See Collins*, 141 S. Ct. at 1787-89. An administrative officer properly appointed does not create a "reason to regard any of the actions taken by [that agency] . . . as void." *Id.* at 1787. To prove the agency action is invalid, Plaintiff must show that the provision itself "inflicted

---

[4] Plaintiff's counsel, as well as others, brought this removal clause argument in many other district courts, both in the Fifth Circuit and across the country. As of yet, no court has found merit in this argument to justify remand. *See Hughes v. Kijakazi*, Civ. Action No. 20-2374, 2022 WL 1256704 (E.D. La. March 9, 2022); see also Dkt. No. 21 at 22, n.5 (providing citation to nearly 30 cases, including cases which Plaintiff's counsel argued on the same legally frivolous grounds).

compensable harm." *Hughes v. Kijakazi*, Civ. Action No. 20-2374, 2022 WL 1256704, at *20 (E.D. La. March 9, 2022) (citing *Collins*, 141 S. Ct. at 1789). Courts considering this question in the context of a Social Security disability determination find no harm can be linked to the unconstitutional removal provision. *Hughes*, 2022 WL 1256704, at *20 (citing other cases finding the same lack of compensable harm).

Under the connection requirement, a plaintiff must show a nexus between the unconstitutional removal clause and the decision denying benefits. *Collins*, 141 S. Ct. at 1789. That nexus must exist between the plaintiff's alleged injuries and the decision of the officials who are subject to the challenged removal restrictions. *Id.* Simply alleging that a plaintiff's constitutional removal-clause protections have been violated is insufficient to show the required connection, unless the claimant can demonstrate that the effect of the removal clause "made it more or less likely that her applications would be denied." *Hughes*, citing *Rhouma v. Comm'r of Soc. Sec.*, No. 4:20-CV-2823, 2021 WL 5882671, at *11 (N.D. Ohio Dec. 13, 2021).

Here, Plaintiff does not show a connection between the removal clause and the denial of Plaintiff's disability claim, nor that the removal clause made her applications more likely to be denied. The ALJ deciding Plaintiff's claims was not subject to the unconstitutional removal clause, which effects the SSA Commissioner only, and Plaintiff has not shown that the President' inability to remove the Commissioner caused any effect on the Appeal's Council's denial of review. Without showing a connection to the harm, Plaintiff has failed to show a right to *de novo* review. And Plaintiff points to no facts

showing that the ALJ or the Appeals Council would have likely made a different determination under a constitutional removal clause.

Having determined that Plaintiff failed to establish that connection or likelihood of a different administration decision, the undersigned FINDS that the ALJ's determination is a valid act of the Agency and does not constitute reversible error. The undersigned need not address the Commissioner's alternative grounds opposing this argument.

## IV.  RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the decision of the ALJ be AFFIRMED. Because all parties have not consented to proceed before a United States Magistrate Judge, the undersigned directs the Clerk of Court to REASSIGN this case to United States District Judge James Wesley Hendrix in accordance with normal procedures.

## V.  RIGHT TO OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific or sufficient. Failure to file written objections will bar

the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except on grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

ORDERED this 21st day of July, 2022.

JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE